FILED IN OPEN COURT
U.S.D.C. - Atlanta

DEC 19 2025

KEVIN P. WEIMER, Clerk
By: *Cm*   Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 1:25-cr-415

WARNER KNOWLAND                           18 U.S.C. § 1343

# INFORMATION

The United States Attorney charges:

## COUNT ONE
## (Wire Fraud)

### A.   Introduction

At times relevant to this Information:

*The Defendant*

1. WARNER KNOWLAND, a resident of the Northern District of Georgia, submitted false and fraudulent tax forms in support of two applications for Paycheck Protection Program ("PPP") loans and obtained funds to which he was not entitled.

2. KNOWLAND operated several businesses, including II Extreme Entertainment, LLC ("II Extreme"). II Extreme was established in the State of Delaware on or about August 2, 2010. KNOWLAND was listed as the registered agent and the authorized person. II Extreme was dissolved on or about June 1,

2013. II Extreme was reestablished in the State of Georgia on or about December 8, 2021. KNOWLAND was listed as the registered agent and the authorized person.

*The Small Business Administration*

3.  The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

4.  In or around March 2020, the President declared the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207. The President also signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and the Families First Coronavirus Response Act.

5.  The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak, which was declared a nationwide disaster by the President on March 13, 2020.

### *The Paycheck Protection Program*

6. One of the new loan programs was the SBA Paycheck Protection Program ("PPP"), which was a loan designed, in part, to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA could forgive all or part of the borrowing businesses' loans provided that employees were kept on the payroll for eight weeks and borrowers submitted documentation confirming that the loan proceeds were used for certain qualifying business expenses (i.e., payroll, rent, mortgage interest, or utilities).

7. Interested applicants applied through an existing SBA lender or any other participating federally-insured financial institution. The PPP application process required applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contained information as to the purpose of the loan, average monthly payroll, number of employees, and background of the business and its owner. Applicants were also required to make certain good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized purposes.

8. Financial Institution #1 was a financial institution that was headquartered outside the State of Georgia. KNOWLAND maintained an

account in his name at Financial Institution #1. KNOWLAND also maintained an account in the name of II Extreme at Financial Institution #1.

9.  Lender #1 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

10. Processor #1 was a FinTech company that processed PPP applications for Lender #1. Processor #1 had servers located outside the state of Georgia.

### B. The Scheme and Artifice

11. Beginning on an unknown date, but no later than in or around April 2021, and continuing through at least in or around December 2021, in the Northern District of Georgia and elsewhere, the defendant,

WARNER KNOWLAND,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises about a material fact.

### C. Manner and Means of the Scheme and Artifice

12. The manner and means by which the defendant sought to accomplish the scheme and artifice included, among others, the following:

  a.  It was part of the scheme and artifice that the defendant would and did prepare and submit, and cause to be prepared and submitted,

4

materially false and fraudulent PPP loan applications to an SBA-approved lender, through a loan processing company.

  b. It was part of the scheme and artifice that the defendant would and did transmit and cause to be transmitted the false and fraudulent PPP loan applications via interstate wires.

  c. It was further a part of the scheme and artifice to induce Lender #1 to fund the PPP loans, the defendant would and did make and cause to be made, multiple false and fraudulent representations and pretenses, including:

    i. stating gross income;

    ii. suggesting that the defendant operated a catering business;

    and,

    iii. fraudulently affirming the truth of statements in the application and information provided in all supporting documents.

  d. It was further a part of the scheme and artifice that the defendant would and did submit, and cause to be submitted, false and fraudulent documentation in support of said applications, including Department of Treasury – Internal Revenue Service 2020 Form 1040, Schedule C, Profit and Loss from Business statements.

e. It was further a part of the scheme and artifice that the defendant would and did cause Lender #1 to approve the PPP loan applications and cause to be transmitted PPP loan proceeds via interstate wire transfers to Financial Institution #1.

f. It was further a part of the scheme and artifice that the defendant would and did use the PPP funds, and cause the PPP funds to be used, for his own personal enrichment and the enrichment of others.

g. It was a further part of the scheme and artifice that the defendant would and did perform acts and make statements to promote and achieve the scheme and artifice and to misrepresent, hide, and conceal and caused to be misrepresented, hidden, and concealed, the scheme and artifice and the acts committed in furtherance thereof.

### D.   Execution of the Scheme and Artifice

13. On or about the date set forth in the count below, in the Northern District of Georgia and elsewhere, the defendant,

WARNER KNOWLAND,

for the purpose of executing the aforesaid scheme and artifice, knowingly and intentionally transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below:

| COUNT | DATE OF WIRE | DESCRIPTION OF WIRE |
|---|---|---|
| ONE | April 14, 2021 | Defendant used an IP address within the Northern District of Georgia to electronically submit an application for a PPP loan to Processor #1, located outside of the state of Georgia. |

All in violation of 18 U.S.C. § 1343.

## FORFEITURE

1. The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of approximately $49,999, which represents the proceeds the defendant obtained from the offenses.

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

7

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

GREGORY W. KEHOE
United States Attorney

By: _____
Lauren Stoia
Assistant United States Attorney

By: _____
Daniel Baeza
Assistant United States Attorney
Chief, Transnational Organized Crime Section